IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARY SUE REED                                              PLAINTIFF

V.                          NO. 09-5113

MICHAEL J. ASTRUE,
Commissioner of Social Security                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Mary Sue Reed, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed her applications for DIB and SSI on October 25, 2006, alleging disability since May 18, 2005. (Tr.100-110). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 35-36, 54-60). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on May 28, 2008, where Plaintiff and a Vocational Expert (VE) appeared and testified. (Tr. 7-34). On September 22, 2008, the ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 39-53). The ALJ found that Plaintiff had the following severe impairments: Chronic Obstructive Pulmonary Disease

(COPD) and Mood Disorder. (Tr. 44). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform light work[1] with certain limitations. More specifically, the ALJ found that Plaintiff could sit, stand, and/or walk for 6 hours out of an 8-hour workday; and must avoid concentrated exposure to fumes, odors, dust, gases, etc. He also found that she was moderately limited (i.e. there was more than a slight limitation but the individual could still function in a satisfactory manner) in her ability to understand, remember, and carry out complex instructions. (Tr. 50). He found that Plaintiff would not be able to perform any past relevant work, but with the assistance of the VE, concluded that there were jobs in the national economy that Plaintiff could perform, such as waitress, cashier, and food preparation worker. (Tr. 52). Plaintiff's request for review was denied by the Appeals Council on April 23, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 1-3).

**Evidence Presented**

Plaintiff was born in 1958 and obtained her GED. (Tr. 10). In January of 2005, Plaintiff presented herself to the Washington Regional Medical Center (WRMC) Emergency Room for evaluation of an upper respiratory infection, associated with a headache and cough. (Tr. 242). She stated that she had a history of asthma, but denied shortness of breath. (Tr. 242). At that

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. §416.967(b).

time, Plaintiff was smoking one pack of cigarettes a day, which she had been doing for twenty years. (Tr. 242). She also stated that she consumed alcohol socially. Plaintiff was diagnosed with sinusitis and acute bronchitis. (Tr. 244). As will be more fully discussed below, over the next few years, Plaintiff made numerous visits to hospitals and clinics, because of chest pain, shortness of breath, nausea and vomiting, or alcohol intoxication. It will be seen that one of the common themes in those visits was Plaintiff's continued smoking and drinking, after being counseled to quit several times.[2]

On February 3, 2005, Plaintiff went to the WRMC Emergency Room complaining of a cough and ankle swelling. (Tr. 235). At that visit, an ETOH (ethyl alcohol) odor was noted. (Tr. 235). She was diagnosed with asthma exacerbation and viral syndrome. (Tr. 237). On March 15, 2005, Plaintiff presented to the WRMC Emergency Room for evaluation of shortness of breath. (Tr. 220). Physical examination was remarkable for basilar crackles bilaterally, and a "faint smell of ETOH" was noted. Plaintiff denied that she had an alcohol problem, but did admit she came from work and admitted to drinking. (Tr. 221). It was noted that Plaintiff smoked one pack of cigarettes per day and reported drinking two beers, plus one-half pint of Schnapps nightly. (Tr. 227). Plaintiff was found to have wheezes in all fields with coarse breath sounds. The assessment was that she had asthma exacerbation and pneumonia. (Tr. 228).

On April 15, 2005, Plaintiff presented herself to the Northwest Medical Center of Washington County, complaining of lower-mid abdominal pain, vomiting, and diarrhea. (Tr. 270, 273). "Smell of ETOH" was also noted in the record. On May 10, 2005, Plaintiff again

---

[2]Although there are numerous inconsistencies in the record as to how many cigarettes Plaintiff smoked, in this recommendation, the Court is focused more on Plaintiff's alcoholism and its ramifications. Clearly, however, Plaintiff's continued smoking, after being counseled to quit, may be considered by the ALJ when making his credibility determination. See Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008).

presented to the WRMC Emergency Room with vomiting, diarrhea, and feet swelling. (Tr. 210). She was recorded as smoking one pack of cigarettes per day and consuming alcohol daily. (Tr. 212). The diagnosis was: N/V/D (nausea, vomiting, diarrhea); viral GE; alcoholism with mild withdrawal; hyponatremia;[3] and hypokalemia.[4] (Tr. 215).

On December 21, 2005, Plaintiff went to the Northwest Medical Center of Washington County, complaining of a two month history of increasing vague chest pain not associated with exertion. (Tr. 250). Plaintiff then stated that she smoked about a pack and a half of cigarettes per day, used Albuterol and Advair at home, and drank one and one-half pints of peppermint alcohol daily. (Tr. 250). The assessment was: COPD exacerbation; chest pain; nausea; and gastroesophageal reflux disease. (Tr. 252). X-rays of Plaintiff's chest were taken on December 22, 2005, and the cardiac silhouette was not enlarged and there was no evidence of pulmonary edema or pleural effusion. (Tr. 262). The impression was some fissural thickening or fluid along the oblique fissure seen on the lateral film, but a focal pneumonia or other significant finding was not appreciated. There was no pneumothorax or infiltrate seen and no evidence of pulmonary edema or pleural effusion. (Tr. 263). Plaintiff's discharge diagnoses was COPD exacerbation and sinusitis. (Tr. 248).

On May 23, 2006, Plaintiff went to the Northwest Arkansas Free Health Clinic, stating she had been out of all medications for two or three months and was suffering from severe asthma and pain in her legs/bones. (Tr. 281). She was found to have asthma exacerbation. (Tr. 281).

---

[3]Hyponatremia - deficiency of sodium in the blood. Dorland's Illustrated Medical Dictionary 916 (31st ed. 2007).

[4]Hypokalemia - abnormally low potassium concentration in the blood; ... Id. at 915.

On September 1, 2006, Plaintiff was taken to Northwest Medical Center with a chest contusion as a result of a previous fall. (Tr. 445). There was strong ETOH on her breath and the hospital was told that she fell the prior week from drinking, and was now complaining of pain with palpation to the 4th and 5th IC space. Her family said she fell against a wall. (Tr. 445-448). She was noted as drinking one-half pint of Schnapps and smoking one pack of cigarettes per day. (Tr. 448). The impression was "chronic lung findings," but there were no definite acute abnormalities in the chest. (Tr. 453). On November 16, 2006, Plaintiff again went to the Northwest Medical Center complaining of a cough, headache, and generalized malaise. (Tr. 404). She had been coughing so much that she ended up vomiting, and had progressively worsening shortness of breath. (Tr. 404). She stated that she had been staying with some friends who had been using a wood stove that had not been working properly, and she believed it made her condition worse. At that time, she was recorded as smoking one pack of cigarettes a day, and stated that she drank "socially." (Tr. 405). The assessment was COPD exacerbation. (Tr. 406).

On January 26, 2007, a Physical RFC Assessment was completed by Dr. Robert Redd. (Tr. 282-289). His primary diagnosis was COPD, and he concluded that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull in an unlimited fashion. He found no postural, manipulative, visual or communicative limitations, but found that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 284-286). He noted that Plaintiff had a history of asthma/COPD, and noncompliance with pulmonary medications. He found that there was no sequential evidence of recurrent hospital missions, emergency room visits or interventions for

pulmonary insufficiency, and concluded that her physical residual functional capacity (RFC) was a 20 pound weight limit with fume precautions. (Tr. 289).

A Psychiatric Review Technique was completed by Brad F. Williams, Ph.D., on February 6, 2007. (Tr. 290-303). Dr. Williams noted that there was no history of mental health treatment and that ETOH was on her breath at the last physical examination. (Tr. 302). He found that there was no credible evidence of a chronic limiting mental disorder and therefore there was no medically determinable impairment. (Tr. 302).

On February 23, 2007, a general physical examination was performed for the Social Security Administration by Dr. John Garrett. (Tr. 310-316). Dr. Garrett diagnosed Plaintiff with COPD and depression, and also said that Plaintiff had moderate severity in her ability to walk. (Tr. 316). On March 20, 2007, Plaintiff presented to the Northwest Medical Center, complaining of dyspnea, cough and congestion. (Tr. 386). At that time, a strong smell of ETOH was recorded, and Plaintiff admitted drinking one-half pint of liquor that evening. (Tr. 388).

On April 6, 2007, another Physical RFC Assessment was completed by Dr. Alice Davidson. (Tr. 328-335). Her primary diagnosis was COPD, and Dr. Davidson found that Plaintiff could: occasionally lift and or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull in an unlimited fashion. (Tr. 329). She found no postural, manipulative, visual or communicative limitations, and stated that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 330-332). In the records Dr. Davidson relied upon in drawing her conclusions, she referred to Dr. Garrett's record as stating that Plaintiff had moderate severity in her ability to "work" rather than "walk."

AO72A
(Rev. 8/82)

On April 26, 2007, Plaintiff went to the Community Clinic at St. Francis House (CCSFH) for a follow-up with her bronchitis, and it was noted that she walked slightly bent over, with limited spinal range of motion. (Tr. 462). The Clinic assessed her with COPD, bronchitis, low back pain, and tobacco abuse, and encouraged Plaintiff to re-enroll in a smoking cessation class. (Tr. 462). An x-ray of her lumbar spine and two views of her chest were taken on April 26, 2007, which revealed a normal chest. (Tr. 475).

On June 1, 2007, a PFS Checklist and Spirometry Test was performed, and it was found that Plaintiff suffered from severe obstructive lung disease with reactive airway component by spirometry. (Tr. 338). On June 15, 2007, when Plaintiff presented herself to CCSFH, she was reported as smoking one-half pack of cigarettes per day. (Tr. 458).

On June 22, 2007, Plaintiff presented to Northwest Medical Center with alcohol intoxication. (Tr. 365). She was found intoxicated by her friends, with a red face and decreased mental state. Her friends reported that Plaintiff had a long history of binge drinking. A bottle of liquor was found in her purse. (Tr. 366). On July 21, 2007, Plaintiff reported to Northwest Medical Center, complaining of shortness of breath. She was advised to stop smoking, and was reported as saying that she drank "½ pint of Peppermint Schnappes[sic] today." (Tr. 355-356). A chest x-ray indicated no radiographic evidence of acute abnormality. (Tr. 360). On September 6, 2007, Plaintiff went to CCSFH, and the record indicates that she answered "yes" as to smoking, stating she smoked one pack per day and had been for 30 years, and answered "no" to alcohol. (Tr. 472).

On October 4, 2007, an evaluation was conducted by Scott McCarty, Ph.D. (Tr. 476-479). Plaintiff disclosed to him that she had a history of heavy alcohol use from 1989-1995, during

AO72A
(Rev. 8/82)

which she drank at least 12 beers as well as hard liquor on a daily basis. (Tr. 476). She received treatment at Decision Point in 1995, and denied drinking since July 4, 2007. (Tr. 476). Dr. McCarty diagnosed Plaintiff as follows:

> Axis I -  Dysthymic Disorder
>        Alcohol Dependence, in early remission
> Axis II - None
> Axis V - GAF - 58-68

Dr. McCarty found that Plaintiff had sufficient capacity to interact in a socially adequate manner, but that her depression might result in mild limitations in her capacity to socialize adequately at times. He also found that her depressive issues might result in mild limitations in her coping capacity for the typical mental demands of basic work-like tasks. He found that she exhibited impaired concentration and attention during the evaluation, and that her depression would result in moderate limitations in her ability to attend and sustain concentration on basic tasks. He found that she exhibited excellent persistence throughout the evaluation, which suggested good capacity to persist at tasks until completion without significant limitations, and that she evidenced somewhat slow processing speed, which suggested her emotional issues would result in mild to possibly moderate limitations in her ability to complete work-like tasks within an acceptable time frame. (Tr. 478-479). In his Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. McCarty found that Plaintiff had mild to moderate restriction in understanding and remembering complex instructions, and mild restriction in carrying out complex instructions. (Tr. 480). He stated that her ability to interact appropriately with supervisors, co-workers and the public, as well as respond to changes in the routine work setting, was not affected by her impairments. (Tr. 481). Dr. McCarty did not address the

AO72A
(Rev. 8/82)

Case 5:09-cv-05113-JLH   Document 10    Filed 06/17/10   Page 9 of 16 PageID #: 42

questions pertaining to alcohol because he noted that "she stopped drinking in July 2007." (Tr. 481).

On May 4, 2008, when Plaintiff reported to Northwest Medical Center, she was reported as smoking two to three cigarettes per day and had consumed alcohol one week prior thereto. (Tr. 538). Her admitting diagnosis was alcoholic hepatitis and COPD, and her discharge diagnosis was: pancreatitis; nausea and vomiting, since resolved; alcoholism; alcoholic hepatitis; and COPD. (Tr. 521). She was admitted to the hospital for alcoholic hepatitis and was put on ETOH protocol for withdrawal purposes, and potassium protocol because of her low potassium. (Tr. 522). It was reported that Plaintiff drank one-fourth pint of alcohol a day, but at times drank one-half pint of whiskey. (Tr. 524). She stated that some days she did not drink, but that she drank most days. She was still smoking two to four cigarettes per day. (Tr. 524). The assessment was: acute pancreatitis; alcoholic hepatitis; nausea and vomiting dehydration due to above; alcoholism; urinary tract infection; and leukopenia[5] and thrombocytopenia,[6] likely due to alcohol. (Tr. 525). In the patient admission record, Plaintiff reportedly quit alcohol "1 week ago." (Tr. 547).

Views of Plaintiff's abdomen and chest revealed no definite evidence of an acute intra-abdominal process. Her left upper quadrant had dystrophic calcification. The heart size and mediastinal contours were unchanged, there was no focal consolidation, effusion or pneumothorax, no gross bony abnormalities, and dystrophic calcification was again noted in the left upper quadrant near the spine. The echogenic liver was consistent with fatty infiltration, and

---

[5] Leukpenia - reduction in the number of leukocytes in the blood below about 5000 per mm. Id. at 1044.

[6] Thrombocytopenia - decrease in the number of platelets, such as in thrombocytopenic purpura. Id. at 1947.

AO72A
(Rev. 8/82)

a mild hepatomegaly[7] was suspected. (Tr. 564). There was sludge in the gallbladder and Plaintiff was tender over the gallbladder. There was no cholelithiasis, biliary ductal dilation, and, other than the sludge in the gallbladder, the gallbladder was unremarkable in appearance. (Tr. 564). On May 6, 2008, ETOH information was given to Plaintiff and she indicated that she did not want any in-patient program. (Tr. 541). On May 7, 2008, Plaintiff was discharged from the hospital, and instructed to refrain from drinking alcohol. (Tr. 527).

On June 3, 2008, Plaintiff presented herself to Northwest Medical Center, complaining of shortness of breath. She admitted to non-compliance with medication, and that she had been drinking vodka that day. (Tr. 501). She also admitted to smoking cigarettes. (Tr. 502). She was reported as being intoxicated, with slightly slurred speech. (Tr. 506). The discharge diagnosis was acute bacterial pneumonia, LLL (lower left lung), and COPD acute exacerbation. (Tr. 511). A radiology report indicated a little haze over the left lower heart border, which was probably a summation of shadows rather than a pneumonia, but the possibility of some lingular infiltrate could not be excluded. (Tr. 519).

On July 12, 2008, Plaintiff again went to Northwest Medical Center with shortness of breath. (Tr. 489). Plaintiff stated that she had run out of Advair a month previously, and could not afford refills. However, she was reported as continuing to smoke. (Tr. 489). She was also reported as having a normal joint range of motion, no swelling or deformities or cyanosis, clubbing or edema. (Tr. 489). In the initial assessment form, she was reported as smoking one pack of cigarettes per day, and answered "Yes" to "occasional" use of ETOH. (Tr. 491). On July 29, 2008, Plaintiff went to the emergency room at Northwest Medical Center with vomiting

---

[7]Hepatomegaly - enlargement of the liver. Id. at 857.

and diarrhea. (Tr. 681). Plaintiff was reported as having a past history of chronic alcoholism, smoking ten cigarettes per day, and drinking one-half a pint of whiskey per day. (Tr. 683). She was also reported as being on no current medication. (Tr. 683). The admitting diagnosis was pancreatitis and ETOH withdrawal. (Tr. 578). The impression was: chronic alcoholism; alcoholic liver disease; alcoholic pancreatitis; hypokalemia; cigarette use; and hypomagnesemia.[8] (Tr. 684). Plaintiff was noted as being not interested in in-patient alcoholic programs and had no interest in stopping ETOH. (Tr. 582). The progress notes stated that the only effective RX was 100% abstinence. (Tr. 583). The notes indicate that rehabilitation under supervision was the best option. Plaintiff had been to in-patient therapy at Decision Point and Alcoholics Anonymous, and did not want to go back to in-patient programs. (Tr. 585). A radiology report indicated that there was probable fatty infiltration of the liver and probable sludge in the gallbladder. (Tr. 680). A CT exam of the abdomen and pelvis revealed:

> 1. Bilateral pleural effusions and infiltrates in the lung bases presumed to be atelectasis. 2. Fatty infiltrates in the liver. 3. Status post left nephrectomy. 4. Diffuse thickening of the colon wall thought to represent diffuse colitis of uncertain etiology. 5. Small amount of ascizes and thickening of the anterior perirenal fascial plance. 6. In the proximal transverse colon, there is a relative area narrowing, which could represent contraction, though a colon mass cannot be entirely excluded.
> Findings CT Pelvis: - Conclusion: 1. Free fluid in the pelvis. 2. Diffuse thickening of the colon wall thought to represent colitis. This is of uncertain etiology and clinical correlation is recommended.
> There are areas of collapse of the colon, thought most likely to be contraction. With the wall thickening, neplasm cannot be entirely excluded and when the patient is able and the colitis or inflammatory change subsides, then followup barium enema or endoscopy would be recommended. 3. No other acute abnormality is seen at this time.

(Tr. 566, 678).

---

[8]Hypomagnesemia - an abnormally low magnesium content of the blood plasma, usually the result of malabsorption, dehydration, alcoholism, or renal disease; the chief manifestation is neuromuscular irritability. Id. at 916.

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

The Court does not believe that the ALJ adequately addressed Plaintiff's alcoholism, which, according to the record, is a serious problem for the Plaintiff, resulting in such diagnoses as alcoholic hepatitis, alcoholic liver disease, and alcoholic pancreatitis. Both liver damage and pancreatitis are included under Substance Addiction Disorders, Listing 12.09, 20 C.F.R. Part 404, Subpt. P, Appendix 1. The Court believes it is necessary to remand this matter to the ALJ in order for him to consider Plaintiff's alcoholic hepatitis, alcoholic liver disease and pancreatitis, and to determine whether she meets Listing 12.09.

In addition, the Court notes the inconsistencies between the physical RFC assessments of Dr. Robert Redd and Dr. Alice Davidson, although only four months apart. Dr. Redd found Plaintiff had the ability to occasionally lift and/or carry 20 pounds and frequently lift and /or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours

in an 8-hour workday. Dr. Davidson found Plaintiff capable of occasionally lifting and/or carrying only 10 pounds and frequently lifting and/or carrying less than 10 pounds, and standing and/or walking at least 2 hours in an 8-hour workday. The ALJ did not resolve or address this inconsistency, but rather found that Plaintiff had the RFC to perform light work with avoidance of concentrated exposure to fumes, odors, dust, and gases. The Court believes the ALJ should send Dr. Redd and Dr. Davidson interrogatories, requesting clarification on the inconsistencies. In addition, one of the medical records relied upon by Dr. Davidson was that of Dr. Garrett, who indicated that Plaintiff had moderate limitation in her ability to "walk." Dr. Davidson instead referred to it as ability to "work." Dr. Davidson should be asked to reconsider her assessment in light of Dr. Garrett's statement regarding Plaintiff's ability to walk.

The Court also believes the conclusions reached by Dr. Scott McCarty in his Medical Source Statement of Ability to do Work-Related Activities (Mental), was based upon the incorrect premise that Plaintiff stopped drinking in July 2007, which is clearly disputed in the record by the many instances of her subsequent intoxication and drinking. In the form completed by Dr. McCarty, one of the questions was:

> (5) If the claimant's impairment(s) include alcohol and/or substance abuse, do these impairments contribute to any of the claimant's limitations as set forth above? If so please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance use/abuse.

Dr. McCarty indicated that this question was "N/A - she stopped drinking in July 2007." Accordingly, the Court believes that if the ALJ finds that Plaintiff does not met Listing 12.09, he should then require Dr. McCarty to complete the Medical Source Statement again.

In addition, the ALJ found that Plaintiff would be able to perform the jobs of waitress,

cashier, and food preparation worker. This finding was no doubt in part based upon the hypothetical he gave the VE, which asked the VE to assume Plaintiff was capable of doing light work. However, as stated earlier, Dr. Davidson's RFC assessment found Plaintiff was capable of doing sedentary work, i.e. could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds. She also found Plaintiff was capable of standing and/or walking at least 2 hours in an 8-hour workday and sitting about 6 hours in an 8-hour workday. Therefore, until the ALJ resolves the inconsistent opinions of Dr. Redd and Dr. Davidson, the ALJ's conclusion that Plaintiff was capable of working as a waitress, cashier, and food prep worker was premature. Furthermore, the VE failed to indicate the DOT numbers for the waitress, cashier and food prep worker positions, and the Court was not able to determine the extent to which Plaintiff would be exposed to fumes, odors, gases and dust in those jobs. Accordingly, the ALJ should ask the VE to specify the DOT numbers for any positions he finds Plaintiff would be capable of performing, after the ALJ obtains clarification from Dr. Redd and Dr. Davidson regarding Plaintiff's RFC.

**Conclusion**

The Court recommends that this matter be remanded to the Commissioner, so that the ALJ can:

1. Consider and address Plaintiff's alcoholic hepatitis, alcoholic liver disease, and pancreatitis, and determine whether Plaintiff meets Listing 12.09;

2. Direct Interrogatories to Dr. Redd and Dr. Davidson to reconcile the inconsistent RFC conclusions;

3. Require Dr. McCarty to complete the Medical Source Statement (Mental) again if the

ALJ finds that Plaintiff does not meet Listing 12.09;

   4. Ask the VE to specify the DOT numbers for any positions he finds Plaintiff would be capable of performing, after the ALJ obtains clarification from Dr. Redd and Dr. Davidson regarding Plaintiff's RFC.

   Based upon the foregoing, having carefully reviewed the record, the undersigned recommends that this matter be reversed and remanded, pursuant to sentence four of 42 U.S.C. §405(g), directing the ALJ to further develop the record in accordance with the instructions in this report and recommendation.

   **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

   Entered this 17th day of June, 2010.

              */s/ Erin L. Setser*
               HONORABLE ERIN L. SETSER
               UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)